# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

JAMES L. HORTON                                                            PLAINTIFF

VS.                                      CIVIL ACTION NO. 1:08cv1505-HSO-JMR

BAY ST. LOUIS POLICE DEPARTMENT;
BOARD OF SUPERVISORS, PEARL RIVER
COUNTY, MISSISSIPPI; and REGGIE SMITH,
WARDEN                                                                            DEFENDANTS

---

## REPORT AND RECOMMENDATION:

This matter is before the Court pursuant to a Motion [28-1] to Dismiss filed on behalf of Defendant Bay St. Louis Police Department on January 21, 2010 and a Motion [42-1] to Dismiss, or in the Alternative for Summary Judgement and Qualified Immunity filed on behalf of Defendants Pearl River County and Reggie Smith on April 29, 2010. Plaintiff filed a Response [48-1] in Opposition to Defendants Pearl River County and Reggie Smith's Motion on May 17, 2010, to which they filed a Reply [49-1]. Defendants' respective Motions are accompanied by Memorandums [29-1, 43-1] in Support thereof. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that Defendant Bay St. Louis Police Department's Motion [28-1] to Dismiss be granted and Defendants Pearl River County and Reggie Smith's Motion [42-1] to Dismiss or in the Alternative for Summary Judgement and Qualified Immunity be partially granted and all claims against Defendants be dismissed with prejudice.

## FACTS:

Plaintiff, James Horton, was arrested by the Hancock County Sheriff's Department on December 14, 2007, and charged with Possession of a Controlled Substance. (Ex. "A" Attach. [45-1]

Defs.' Mot. Summ. J. 15.) Plaintiff was held at the Pearl River County Jail ("PRCJ") for eight (8) days, until he posted bond on December 22, 2007. *Id.* On December 23, 2008, Plaintiff, filed this *pro se* § 1983 action against Bay St. Louis Police Department, Pearl River County Jail, Medical Staff of Pearl River County Jail, Warden Reggie Smith, and Pearl River County Board of Supervisors. On May 17, 2010, Defendants Pearl River County Jail and Medical Staff of Pearl River County Jail were dismissed as defendants in the instant action for not being proper parties to the lawsuit. (*See* Order [47].) Plaintiff alleges that he suffered a violation of his civil rights while being held as a pretrial detainee in the PRCJ.

In his Complaint, Plaintiff contends that he was denied adequate medical treatment during his detention at the PRCJ. Specifically, Plaintiff alleges that during his incarceration he was observed by medical staff three times per day but was never given his diabetic medication. (Pl.'s Compl. [1-1] 2.) Also, Plaintiff alleges that following his incarceration at the PRCJ, he sought medical treatment at Hancock Medical Center for an infection that developed in his left foot. *Id.* Plaintiff claims he was diagnosed with a Staph infection in his left foot and the foot had to be amputated to save his life. *Id.* at 3. Defendant Bay St. Louis Police Department filed its Motion to Dismiss on January 21, 2010, and Defendants Pearl River County Board of Supervisors and Reggie Smith (hereinafter "PRC Defendants") filed their Motion to Dismiss for Qualified Immunity, or Alternatively for Summary Judgment on April 29, 2010.

## STANDARD OF REVIEW:

In considering a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). The issue is not whether the plaintiff will prevail but whether the plaintiff is entitled to pursue his complaint and offer evidence in support of his claims.

*Doe v. Hillsboro Indep. Sch. Dist.,* 81 F.3d 1395, 1401 (5th Cir. 1996). Motions to dismiss are disfavored and are rarely granted. *Beanal v. Freeport-McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir. 1999). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 164 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). "However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'"*Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 420-421 (5th Cir. 2006)(quoting 3 CHARLES ALAN WRIGHT & ARTHUR R.MILLER, FEDERAL PRACTICE AND PROCEDURE: Civ. 2d § 1216 at 156-159 (footnote omitted)). The Court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

Ordinarily, the Court may not look beyond the pleadings in ruling on a 12(b)(6) motion. *Baker*, 75 F.3d at 196. However, in evaluating a motion which challenges the adequacy of a complaint under 12(b)(6) in a prisoner's *pro se* suit, this Court must look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King,* 707 F.2d 215, 220 (5th Cir.1983). Furthermore, the Fifth Circuit has stated:

> [I]t is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly *pro se* complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.... *Pro se* prisoner complaints must be read in a liberal fashion and should not be dismissed unless it appears beyond all doubt that the prisoner could prove no set of facts under which he would be entitled to relief.

*Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989)(quoting *Taylor v. Gibson*, 529 F.2d 709, 713-714 (5th Cir. 1976)).

To survive a motion to dismiss, plaintiffs are required to plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculation level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Recently, the Supreme Court clarified that review of a 12(b)(6) motion is guided by two principles: one, a court must apply the presumption of truthfulness only to factual matters, and not to legal conclusions; and two, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*

## APPLICABLE LAW:

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680, 693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the

color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official

policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999); *see Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## ANALYSIS:

In its Motion [28-1] to Dismiss, Defendant Bay St. Louis Police Department argues that it is simply a department within the City of Bay St. Louis, Mississippi, and therefore, is not a proper party defendant in the present 1983 action. This Court agrees. A city police department "is not a proper party defendant" in a civil rights suit arising from the purported actions of the City's police officers.[1] *Parker v. Ft. Worth Police Dep't*, 980 F.2d 1023, 1025-26 (5th Cir. 1993) (citing *Darby*

---

[1]The Court notes that Plaintiff's allegations, which will be discussed in detail throughout the R&R, are against Pearl River County and PRCJ staff, not any officers with the Bay St. Louis Police Department.

*v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991)).

Defendant Bay St. Louis Police Department further argues that had Plaintiff filed suit against the proper party in interest, City of Bay St. Louis, Mississippi, it would still be entitled to dismissal for failure to state a claim upon which relief can be granted. Defendant Bay St. Louis Police Department claims that Plaintiff has not made a single actionable allegation against it or the City of Bay St. Louis, Mississippi. A review of Plaintiff's pleadings reveal that Plaintiff's only mention of this defendant is found in his Complaint, wherein he states that "[he] was arrested on December 20, 2007 by the Bay St. Louis Police Department and then transported to Pearl River County Jail." (Pl.'s Compl. [1-1] 2.) Defendant Bay St. Louis Police Department claims that its only role was in arresting Plaintiff, not housing him. (Def.'s Mem. [29-1] 3.) Plaintiff, however, does not allege that the arrest was invalid or that he was mistreated during the arrest or transportation to the PRCJ. (*See* Pl.'s Compl. [1-1].) Plaintiff's only alleged constitutional violation found in his Complaint is his claim that he was denied adequate medical treatment by the PRCJ staff while he was incarcerated at the PRCJ. *Id.* Plaintiff has not alleged that the City of Bay St. Louis, Mississippi was in any way involved with his treatment at the PRCJ. The Court notes that Plaintiff did not respond to Defendant Bay St. Louis' motion to dismiss.

As previously stated, to survive a motion to dismiss, plaintiffs are required to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiff has not alleged any misconduct on the part of Defendant Bay St. Louis Police Department or the City of Bay St. Louis, Mississippi. The Court finds that Plaintiff has failed to state a claim against Defendant Bay St. Louis Police Department pursuant to § 1983, and he has failed to plead any facts that state a plausible basis for recovery against the City of Bay St. Louis, Mississippi. Therefore, Defendant Bay St. Louis Police Department should be dismissed with prejudice.

PRC Defendants:

In their Motion [42-1], PRC Defendants assert that Plaintiff has failed to exhaust his administrative remedies, and therefore his section 1983 claims should be procedurally barred under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Alternatively, PRC Defendants contend that Plaintiff's official capacity claims against them are, in reality, claims against Pearl River County. Thus, Plaintiff must demonstrate that his claims are actionable under the United States Supreme Court's jurisprudence regarding municipal liability under section 1983. Defendant Smith also asserts that Plaintiff's individual capacity claims are subject to a qualified immunity defense because not only has Plaintiff failed to sufficiently establish that a violation of his Constitutional rights has occurred, but Defendants' conduct was objectively reasonable and Defendants were acting within the scope of their discretionary authority at all relevant times.

PRC Defendants contend that Plaintiff's complaint was filed pursuant to 42 U.S.C. § 1983, and is thereby subject to the Prison Litigation Reform Act ("PLRA"), which provides in pertinent part, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). The PLRA requires *prisoners* "to exhaust 'available' 'remedies,' whatever they may be. (emphasis added). The failure to do so prevents [them] from pursuing a federal lawsuit at this time." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). The PLRA explicitly defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

The Court notes that Plaintiff's inmate file does not contain one inmate grievance form concerning any of the above allegations. (*See* Ex. "A" Attach. [45-1] Mot. Summ. J.) The Court further notes that Plaintiff's file does not contain any inmate grievance form submitted by Plaintiff whatsoever. *Id.* However, Plaintiff was released from custody on December 22, 2007, and the present action was filed on December 23, 2008. Thus, Plaintiff was not a "prisoner" for purposes of the PLRA at the time suit was filed. The PLRA does not apply to persons who are not prisoners at the time litigation is implemented. *See Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000) (holding that the attorney's fees provisions of the PLRA did not apply where plaintiff was not a prisoner when he filed his civil rights complaint); *Ahmed v. Dragovich*, 297 F.3d 201, 210 n.10 (3rd Cir. 2002) (noting that "every court of appeals to have considered the issue has held that the PLRA does not apply to actions filed by former prisoners."). Therefore, PRC Defendants' motion to dismiss on the basis of Plaintiff's failure to meet the PLRA's administrative remedies exhaustion requirement should be denied.

The Court will now proceed to review Plaintiff's substantive claims against PRC Defendants in both their official and individual capacities.

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[2] or "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton,* 74 F.3d at 103. "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's

---

[2] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

Plaintiff does not specify whether his claims against Defendant Smith are in his official capacity, his individual capacity, or both. Because *pro se* complaints are to be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Smith in both his individual and official capacities. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

Plaintiff alleges that he was denied medical care while incarcerated at the PRCJ. There is no significant distinction between pretrial detainees and convicted inmates when the denial of medical care is at issue. *Gibbs*, 254 F.3d at 548. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Id.* In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart*, 174 F.3d at 534-35.

In his Complaint, Plaintiff claims that he is diabetic and takes medication for the illness. (*See* Pl.'s Comp. [1-1].) Plaintiff alleges that during his incarceration at the PRCJ he was observed by medical staff but never given medication. *Id.* at 2. Plaintiff asserts that after his release from the PRCJ he sought medical treatment for an infection on his left foot. *Id.* Plaintiff claims that he was

diagnosed with a Staph infection and the left foot had to be amputated to save his life. *Id.* at 3. However, Plaintiff fails to allege that the PRC Defendants implemented a custom or policy which violated his constitutional rights. The Court finds that such bare allegations, without more are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. Therefore, the Court finds that Plaintiff's Complaint fails to state an official capacity claim against the PRC Defendants for allegedly denying him medical treatment while incarcerated at the PRCJ.

Additionally, the Court finds that Plaintiff's Complaint does not allege that Defendant Smith acted with deliberate indifference to Plaintiff's medical needs. In Plaintiff's Response [48-1] to PRC Defendants' Motion, Plaintiff alleges that Defendant Smith "was present when [he] arrived at the [PRCJ]..., looked over [his] medical records," and issued him an unsanitized pair of shoes. (Pl.'s Resp. [48-1] 2.)[3] However, Plaintiff fails to allege that Defendant Smith was aware that the alleged unsanitary shoes were an excessive risk to Plaintiff's health. Further, Plaintiff does not allege that Defendant Smith was ever aware of any request for medical treatment by Plaintiff while incarcerated in the PRCJ or that Plaintiff was in need of medication. Therefore, Plaintiff has not alleged sufficient facts to permit an inference that Defendant Smith was subjectively aware of a risk to Plaintiff's health. At best, Plaintiff's allegation states a tort claim for negligence, if that; however, section 1983 imposes liability for deprivation of constitutionally protected rights, not for violations of tort duties of care. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). The Court finds that, absent an allegation of Defendant Smith's personal involvement, Plaintiff's Complaint fails to state an individual capacity claim for denial of medical treatment. *See Thompkins*, 828 F.2d at 304.

---

[3]The Court notes that Plaintiff never specifically alleges that he obtained a Staph infection from the jail issued shoes or from the jail, however, such is Plaintiff's implication.

Although the Court finds that Plaintiff's Complaint should be dismissed with prejudice, it will, out of abundance of caution, analyze PRC Defendants' summary judgment motion.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

In his Complaint, Plaintiff alleges that the PRC Defendants failed to provide him with proper medical care while incarcerated at the PRCJ. As previously noted, Plaintiff's official capacity claim against the PRC Defendants is, in reality, a claim against the offices which they occupied at the time of the alleged incident and, ultimately, Pearl River County. Therefore, to the extent Plaintiff brings this action against the PRC Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff claims that while incarcerated at the PRCJ he was not given medication for his diabetic condition, and after leaving the PRCJ he had to have his left foot amputated due to a Staph infection. (*See* Pl.'s Compl. [1-1].) However, Plaintiff's allegations concerning inadequate medical care are in total contradiction to his medical file which demonstrates that Plaintiff's blood sugar level was monitored several times a day and he was given insulin when needed. (*See* Ex. "A" Attach. [45] Defs.' Mot. Summ. J.) Also, Plaintiff's inmate file does not contain a single sick call, medical request, or grievance submitted by Plaintiff. *Id.* Other than the above mentioned allegation of inadequate medical care, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claim against the PRC Defendants.

To the extent, Plaintiff's Complaint also seeks liability against Defendant Smith in his

individual capacity, Defendant Smith has pled the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert,* 500 U.S. at 231. As sated earlier, when an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs*, 254 F.3d at 548. In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendant Smith contends, and the Court agrees, that Plaintiff has failed to meet his burden of establishing that Defendant Smith was deliberately indifferent to his serious medical needs. Plaintiff alludes that his left foot had to be amputated due to a Staph infection he contracted while incarcerated at the PRCJ because the medical staff did not give him diabetes medication or properly

treat his diabetic condition. However, after a thorough review of the record, the Court is unable to conclude that Plaintiff has created a genuine issue as to whether Defendant Smith was deliberately indifferent to his serious medical needs. There is no evidence indicating that Plaintiff ever submitted a sick call or medical request, let alone that he was ever denied any medical request, and certainly no evidence that Defendant Smith was aware that Plaintiff was in need of treatment beyond what he was already receiving.

On December 14, 2007, when Plaintiff was booked into the PRCJ, he completed a Medical Intake Screening form and indicated that he had high blood pressure and diabetes. (*See* Ex. "A" Attach. Defs.' [45-1] Mot. 11.) Also, Plaintiff provided a list of medications that he was taking and he disclosed that his left great toe had been amputated three months prior. *Id.* While incarcerated at the PRCJ, Plaintiff's blood sugar was checked at least twice a day by PRCJ staff, except December 18, 2007 when Plaintiff refused treatment. *Id.* at 13. Plaintiff's inmate medical file reveals that he was given insulin when needed, in particular, on December 15, 2007 when his blood sugar was the highest during his incarceration. *Id.* Plaintiff was also provided a diabetic diet while incarcerated at the PRCJ. *Id.* at 14. As noted previously, Plaintiff's file is devoid of any request for medical treatment and there is no indication that Plaintiff ever complained about his left foot, any infection, not receiving medications, or that he ever wanted any medical treatment. (*See* Ex. "A" Attach. [45-1] Defs.' Mot.)

Plaintiff's medical file, which was not before the PRCJ medical staff during Plaintiff's incarceration, reveals that prior to his incarceration in April 2007, he began seeing Dr. Jeffrey Benzing for an ulceration and infection on his left foot. (*See* Ex. "B" Attach. [45-2] 46-52.) Plaintiff informed Dr. Benzing that the ulceration had been present for two years. *Id.* at 46. Plaintiff's left great toe, which contained a bone infection, was eventually amputated in July 2007. *Id.* at 53. After

the amputation, Plaintiff was seen by Dr. Benzing on numerous occasions due to his noncompliance with the doctor's postoperative instructions. *Id.* at 53-65. In particular, Plaintiff was bearing weight on the amputated region, not wearing his postoperative shoe, not taking ampicillin, and getting the dressings wet. *Id.* After Dr. Benzing ordered a house nurse to visit Plaintiff at home to change his dressings for him, Plaintiff's foot began to heal. *Id.* On October 1, 2007, Dr. Benzing noted that no signs of infection were found on Plaintiff's foot. *Id.* at 64. Plaintiff was a no-call and a no-show for his last two appointments with Dr. Benzing. (*See* Ex. "C" Attach. [45-3] Defs.' Mot. 88.)

Plaintiff was incarcerated at the PRCJ from December 14, 2007 to December 22, 2007. At which time Plaintiff never submitted a sick call, medical request, or grievance concerning his foot, medications, his diabetes, or a cell-mate with a Staph infection. (*See* Ex. "A" Attach. [45-1] Defs.' Mot.) On December 28, 2007, six days after his release from the PRCJ, Plaintiff was admitted to the Hancock Medical Center complaining of redness and swelling to his left second toe. (*See* Ex. "C" Attach. [45-3] Defs.' Mot. 83.) An x-ray performed on December 28, 2007 showed no signs of infection in Plaintiff's left foot. (*See* Ex. "D" Attach. [45-4] Defs.' Mot. 12.) Plaintiff was discharged on December 31, 2007 in good condition with the doctor noting that Plaintiff's "erythema and swelling responded beautifully and it was almost gone by the time of discharge." *Id.* On January 9, 2008, Plaintiff's cellulitis in his left foot was noted as being well controlled with no openings. (*See* Ex. "B" Attach. [45-2] Defs.' Mot. 78.) On January 23, 2008, Plaintiff's 2nd and 3rd digits of his left foot were positive with edema and mild erythema; though no external signs of infection were present, Plaintiff's digits were noted as being "quite swollen." *Id.* at 77. X-rays were performed and a bone infection was found in the 2nd, 3rd, and 4th digits of Plaintiff's left foot. *Id.* at 75-77. After several delays by Plaintiff, his left foot was amputated on February 23, 2008. (*See* Ex. "C" Attach. [45-3] Defs.' Mot. 13.)

After reviewing the record and Plaintiff's pleadings, this Court finds that Plaintiff has not alleged sufficient facts to permit an inference that Defendant Smith was aware of a serious risk to Plaintiff's health. Furthermore, the evidence of record indicates that Plaintiff was seen by PRCJ medical staff at least twice a day to have his blood sugar checked, except the day he refused attention, and that he was administered insulin when needed. *Id.* The Court notes that Plaintiff's medical file does not contain any grievance, sick call, or medical request seeking medical treatment, medications, or complaining about an infection. *Id.* At best, Plaintiff's claim amounts to negligence, however, negligence nor neglect gives rise to a section 1983 cause of action. *See Varnado*, 920 F.2d at 321. Plaintiff's allegation fails to demonstrate deliberate indifference by any named defendant. Plaintiff never complained about his foot, about an infection, about unsanitary shoes, or about not receiving medication. There is no evidence to support a finding that any defendant, or any jailer, was aware of any serious threat to Plaintiff's health or safety. The failure to perceive any risk to Plaintiff's health or safety, "while no cause for commendation, cannot... be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). Although the amputation of Plaintiff's foot is tragic, the record establishes that there is no genuine issue of material fact as to whether any jail personnel demonstrated deliberate indifference to his medical needs. Accordingly, Plaintiff has failed to set forth a constitutional claim.

The Court also finds that to the extent Plaintiffs' complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-

9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

## RECOMMENDATION:

The Court notes that Plaintiff is proceeding pro se, and has viewed the Complaint in a liberal fashion. The Court recommends that the portion of PRC Defendants' motion seeking dismissal for failure to exhaust administrative remedies be denied as Plaintiff was not a prisoner for purposes of the PLRA. Further, after a thorough review of the record, the Court concludes that Plaintiff's pleadings do not include allegations of any personal involvement by Defendant Smith, nor do they attribute the alleged constitutional violations to a policy or custom implemented by Pearl River County. Furthermore, Plaintiff has failed to state a claim against Defendant Bay St. Louis Police Department or the City of Bay St. Louis, Mississippi. Accordingly, Plaintiff has failed to allege sufficient facts to establish a claim for relief pursuant to § 1983 and therefore Plaintiff's complaint should be dismissed. *See Drgac v. Murray*, 302 Fed. Appx. 254 (5th Cir. 2008).[4]

Also, after considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether the PRC Defendants violated Plaintiff's constitutional rights during his incarceration as a pretrial detainee at the PRCJ. Plaintiff's allegation that he was denied adequate medical care does not rise to the level of a constitutional violation. Accordingly, the Court recommends that Defendant Smith and Pearl River County are entitled to summary judgment, and Plaintiff's official and individual capacity claims against Defendant Smith should be dismissed with prejudice.

---

[4]An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority. 5th Cir. R. 47.5.4

In accordance with the Rules of this Court, any party, within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

**SO ORDERED**, this the ___2nd___ day of August, 2010.

                                        *s/ John M. Roper, Sr.*
                                  CHIEF UNITED STATES MAGISTRATE JUDGE